# Objection to Discharge

## Case # 2:17-bk-04026-EPB   Cale Bauch - Cynthia Collins-Bauch

7/5/17

Judge Eddward P. Ballinger Jr
.U.S. Bankruptcy Court, Arizona
230 N. 1st Ave. # 101
Phoenix, Az. 85003-1727

FILED USBC MAIL PHX
2017 JUL 12 PM 1:02

Your Honor. :

I am an unsecured creditor in the Bauch bankruptcy case of Cale and Cynthia Bauch.

I have heard that the fresh start in bankruptcy is limited to the **"honest, but unfortunate, debtor."** The Bauchs are neither honest nor unfortunate. They mismanaged their finances and they took calculated risks in buying my business. In my sales contract they even acknowledged that Cale is **" an experienced and knowledgeable businessman and is aware of the risks"**. They used this business to defraud me and their customers. And they have used the bankruptcy laws in the past to eliminate their mismanaged debts.  ( Emails and letters are attached confirming these facts )

My claim in particular began on On Oct. 23, 2015 when Cale and Cynthia Bauch entered into agreement to purchase Solera Services, a home services company in the adult community of Solera at Johnson Ranch, in San Tan Valley Az., for $71,500  ( contract attached ). They made a down payment of $25,000 with balance due in 12 months with payments to be made along the way. No additional payments were ever made. Many times during the negotiations I mentioned that it was critical that they live in the area and would not sell if they would not commit to do that. They said they would but made no effort to do so. Also, during the negotiations, the fact that Cynthia Bauch had previously filed bankruptcy was not disclosed and they secured my carry back loan under false pretenses.

I continued to work with Cale up to the last minute and brought him customers, even though the contract only require me to do so for 60 days. So, I was still the face of the company and when they left, the customers came to me looking for reimbursement. My reputation within the community was damaged beyond repair.

During the course of business the Bauch's:

1. Performed unacceptable work
2. Defrauded customers out of money by not providing the services they promised.
3. Attempted to get competitors to collude in a price fixing scheme
4. Even after they had decided to go out of business, they still represented themselves as property managers and collected management fees with no intention of providing services and refused to give refunds
5. They did not return keys, leaving homeowners with the expense of changing their locks.
6. They collected insurance premiums and did not pay the insurance company. A Felony.
7. They flagrantly ignored the HOA guidelines.

At the age of 75 and being self employed most of my life, I have no retirement plan to fall back on. I started this business in 2007 to supplement my social security with a plan to build up in value and sell to further supplement my retirement, which now is lost. The Bauchs failed at managing this business and went out of business 7 months later, approximately May 1, 2016, without making any further payments, per the contract, leaving a balance of $41,700. Basically stealing a large part of my retirement and while also defrauding many of my neighbors.

I do not feel the Bauchs should receive the privilege bankruptcy of protection they seek due to their past fraudulent business practices and history of bankruptcy.

Sincerely,

Rick Smith

 Gmail

Rick Smith <ibgolfing@gmail.com>

## Cale

walter chapman <walchap56@gmail.com>  Sun, Feb 5, 2017 at 9:48 AM
To: Rick Smith <ibgolfing@gmail.com>

I have knowen rick smith since 2009 when I first moved here. Rick took care of our house when we were gone we were fast to learn he was a man that could be trusted so it wasent uncommon for me to give rick a 1000.00 dollars and he would use it as needed. Rick always hired good contractors and if they did poor work he made them make it right. When rick sold the business to Cale and cyndee we thought they cold be trusted. So we gave them 500.00 to use as they needed. Cale hired poor contractors they done poor work but expected more money. Cale and cyndee owe me more than 200.00 they keep telling me money is on its way. Lies,lies and more lies we have yet to get our money back. We found Cale and cyndee to be liars and thieves. I have nothing good to say about them.

Sent from my iPhone
[Quoted text hidden]

 **Gmail**  Rick Smith &lt;ibgolfing@gmail.com&gt;

## Cale Bauch

**Peter Carton** &lt;pcarton@accesscomm.ca&gt;  Sun, Apr 9, 2017 at 10:14 AM
To: "Smith, Rick" &lt;ibgolfing@gmail.com&gt;

To whom it may concern

I hired Cale Bauch to look after my home for seven months in April of 2016 as a result of Rick Smith selling his business Solera Services to Cale. Rick and his company had looked after my home for four years previous to that. I received marginal service at best with most contact coming from my call to him to find out how my home was doing. When he failed to respond to a water leak in September I had to find someone else to fix it. He then basically told me he was out of the business – so I asked for my keys back and whatever balance was owing to me for the two months remaining that I had paid him for in advance. To date I have received no refund of my monies owed. PDC.


Peter D Carton
51 Mayfield Road
Regina, Sask
S4V 0B7
306-569-2229

969 W Whistling Wind Dr
San Tan Valley, AZ
85143
480-256-0225

Kim Kusick
17431 W Big Lake Blvd.
Mount Vernon, WA 98274

April 24, 2017

Rick Smith
31175 N Orange Blossom Circle
San Tan Valley, AZ 85143

Re: Rental property
31218 N Orange Blossom Circle
San Tan Valley, AZ 85143

Dear Rick,

As you have requested, here is a recap of my experience with Cale Bauch and our rental home in San Tan Valley, AZ.

My husband and I have been clients of yours since 2011 and you have rented our house out several times over the years following. I believe you notified me in late 2015 that you were retiring and selling your business to Cale Bauch and his wife. I explained that I wished to rent my home out for the 2016/2017 winter season and as it happened you knew of a couple that would be interested. You stated that Cale would be handling the business on his own by then and offered to introduce me to him when I came down in April of 2016. That meeting did occur at our home in April and we agreed that we would go with the arrangements we had made with you in years past since you had arranged for the tenant during your transfer of business to Cale. That meant that the rent per month would be $2,500.00, there would be 10 percent management fee, a cleaning fee, and an insurance fee of $25.00 that would allow for a $1,500.00 policy should there be any property damage. Rent in full, ($12,500.00) would be paid 90 days prior to the tenants moving in. The rental dates were set for November 1, 2016 and ending on April 1, 2017. The tenants were agreeable to these arrangements.

In April you did bring Cale over to meet with me and we discussed the arrangements. During the course of the summer I contacted Cale to make sure we were on track for the house to be occupied and for the rent to be collected and forwarded to me minus the 10 percent management fee. Cale was to complete all of the HOA paperwork, arrange for the insurance policy to be purchased and when the tenants left, arrange for cleaning of our home. Cale would also be meeting the tenants on November 1st to check them in and then again on April 1st to check them out. In August I did receive the rental money, $11,500.00 which reflected an error on their part in terms of the management fee. The management fee should have been $1,250.00 and I owed them $250.00 due to their bookkeeping error. I called Cale and let him know about the error and sent him a check for $250.00 after that call. I still hadn't received any of the tenants paperwork and asked about that, to which he replied that it was being

taken care of. I let Cale know that I would be down at the house in October and would like to meet with him and go over the specifics of the agreement to include information that the tenants would need to know about our home and the HOA community our home was located in.

When I arrived in October 2016, I called Cale to set up a meeting date and time. He was very upset and told me that you had just served him papers and were suing him regarding the sale of the business. He also told me he wasn't sure he wanted to represent my property anymore but was waiting to speak with his attorney in the next few days and would call me back. I reminded him that we had an agreement and that he had already been paid in full for services for the upcoming rental term. I waited a few days and called Cale back and did indeed set up a meeting with him. He told me that he would not be representing our property and would not be refunding any of the money paid to him which included the property management fee, the cleaning fee, and the insurance policy fee. He did agree to meet with me and return my keys and give me the rental paperwork.

On the day Cale came to our house I had a neighbor friend join us to act as an witness to our meeting. Cale was angry, abrupt, used inappropriate language and had no intention of returning any of the funds and did not have my house keys, stating that you still had them. Cale stated that he had already done his job in finding a tenant and that property managers really did not do anything after that. He asked me what I expected of him and I stated that my expectation was that he would do basically what your business had always provided. That he would check the tenants in and out, check on the house and be available should there be any issues with the house while the tenants were occupying it. He told me he would not be providing that service. My neighbor asked him again about the funds he had withheld and that he needed to return them. Cale told us that he didn't have the money and that he would be ruined by this impending lawsuit and would have to file bankruptcy. Cale did give me copies of the tenants drivers licenses but did not give me any copies of forms that should have been filed with our HOA. Our meeting came to an end when I told him there was nothing more to discuss. Cale had calmed down by then and offered an apology for a bad situation but really didn't think he was the one at fault.

After that meeting, I contacted the tenants and explained the situation to them and that all communication would need to be directed to me during their stay. I also arranged with you and two other friends in our neighborhood to be available for assistance should there be a problem with the house. I contacted the HOA office and found that no paperwork had been submitted on my behalf to meet the rules of the HOA. I found access to the forms, completed and turned them in before the tenants arrived.

To date, Cale stills owes me $1,250.00 for property management fees and $100.00 for cleaning fees. He owes the tenants $25.00 for an insurance policy that was never purchased and $50.00 for cleaning.


Sincerely,

*Kim Kusick*

Kim Kusick

 **Gmail**

Rick Smith <ibgolfing@gmail.com>

## Cale Bauch

**Jennifer Rasmussen** <JRasmussen@csatravelprotection.com>     Tue, May 2, 2017 at 1:48 PM
To: Rick Smith <ibgolfing@gmail.com>

Hi Rick,

Thank you for your patience while I gathered information from reconciliation. No, unfortunately we did not receive premium for the following renters:

| | |
|---|---|
| 1/1/17 - 3/31/17 | Barry and Joan Swane - 293 W Peak Pl, San Tan Valley, AZ 85143 |
| 1/1/17 - 3/31/17 | Curt and Anita Firman - 904 W Desert Lily, San Tan Valley, AZ 85143 |
| 11/1/16 - 3/31/17 | Kelvin and Orla May Glydon - 31218 N Orange Blossom Circle, San Tan Valley, AZ 85143 |
| 1/1/17 - 3/31/17 | Terry O'neill - 923 W Mountain Peak Way, San Tan Valley, AZ 85143 |
| 1/1/17 - 4/30/17 | Tom Hansen - 31015 N Orange Blossom Circle, San Tan Valley, AZ 85143 |

I am going to send a follow up request, but I'm not hopeful

Thank you


**Jennifer Rasmussen**

Senior Account Manager

Phone     (858) 810-2380

Fax     (858) 810-2494

Toll Free     (888) 470-9123


JRasmussen@csatravelprotection.com

 **Gmail**     Rick Smith &lt;ibgolfing@gmail.com&gt;

## (no subject)

**Gary Hamilton** &lt;ham1949@hotmail.com&gt;     Thu, Mar 23, 2017 at 8:42 AM
To: Rick &lt;ibgolfing@gmail.com&gt;

Just for your informatuon I was approached by Cale Bauch in my garage. He asked me to have our housewatch prices the same so we wouldnt have conflict with each other. I told him I will not price fix. Gary

Sent from my T-Mobile 4G LTE Device

-------- Original message --------
From: Rick &lt;ibgolfing@gmail.com&gt;
Date: 3/23/17 08:31 (GMT-07:00)
To: Gary Hamilton &lt;ham1949@hotmail.com&gt;
Subject: Re:

Cale Bauch

Do in an email if you can

Thx

Sent from my iPhone

On Mar 23, 2017, at 6:53 AM, Gary Hamilton &lt;ham1949@hotmail.com&gt; wrote:

> Party on the 29th. Give me full name of kale so I can send text.
>
>
> Sent from my T-Mobile 4G LTE Device
>
>
> -------- Original message --------
> From: Rick Smith &lt;ibgolfing@gmail.com&gt;
> Date: 3/23/17 00:11 (GMT-07:00)
> To: Gay Hamilton &lt;HAM1949@hotmail.com&gt;
> Subject:
>
> Hey, Don't for get to shoot me an email about your experience, observations and in particular the price fixing discussion.
>
> I can't find the block party on the calendar. What day is it ?
>
> Thanx
>
> Rick Smith
> H  480-677-2773
> C  480-332-4424

 Gmail      Rick Smith <ibgolfing@gmail.com>

## Solera Services

Ed Towill <ETowill@hoamco.com>      Fri, May 6, 2016 at 4:52 PM
To: "rick.aztp@gmail.com" <rick.aztp@gmail.com>

Rick and Cale,

It has come to our attention that your business is using the name Solera Services. The Board of Directors has requested that I contact you and request that you use a different name. We do not want to have any misunderstandings with homeowners or any inference to the Solera homeowners that your business is connected with the HOA.

In addition there are two other issues we wish to bring up with you:

We have been told by a homeowner that Cale asked them to consider renting their house for several weeks at a time. The Solera at Johnson Ranch Governing Documents are clear that homeowners can not rent for less than 90 days.

Earlier this year Cale submitted an ARC request for work to be done at one of the houses he manages. The ARC approved the request, but in conversation Cale admitted to me that the work had already been done. The Solera governing documents are also clear that this is not permitted. It could be quite complicated and expensive for everyone, including the homeowner where the work was done if the ARC did not approve it or ask that it be removed or changed. This should be avoided in the future and any exterior work should not start until approved by the Arc.

Your cooperation in these matters is much appreciated.

Edward Towill

Community Manager

Solera at Johnson Ranch

etowill@hoamco.com

480-987-0650

# Solera Services **_PURCHASE AGREEMENT_**

This Business Purchase Agreement ("Agreement") is made and entered into on October 23, 2015, by and between Rick Smith, having its principal office of business at 31175 N Orange Blossom Cir., San Tan Valley, Arizona 85143 ("Seller"), on the one hand, and Cale Bauch & Cynthia Collins-Bauch, ("Buyer"), on the other hand. Seller and Buyer are collectively referred to herein as (the "Parties"), and are sometimes referred to individually as a ("Party").

RECITALS:

WHEREAS, Seller, Rick Smith, is the owner of a Solera Services, located at 31175 N. Orange Blossom Cir, San Tan Valley, Arizona 85143 (collectively, the "Business");

WHEREAS, Seller desires to sell the Business to Buyer, and Buyer desires to purchase the Business from Seller.

NOW, THEREFORE, for and in consideration of the mutual covenants and benefits derived and to be derived from this Agreement by each Party, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Seller and Buyer hereby agree as follows:

A. Subject Matter

1. Description of Business

A service business providing a variety of services to homeowners that include, but are not limited to, caretaking, pest control, landscaping, remodeling, handyman services.

The Business includes the following properties:
All the trade and customer contacts,
1 Acer laptop computer with Quick books
Keys to managed homes
Goodwill, and other intangible assets

Agreement to Sell

Subject to and in accordance with the terms and conditions of this Agreement, Buyer agrees to purchase the Business from Seller, and Seller agrees to sell the Business to Buyer. Seller represents and warrants to Buyer that it has (and Buyer will have) good and marketable title to the Business, free and clear of all liens and encumbrances. Seller also agrees to forward any inquiries to Buyer, and to make himself available for assistance in the transition of ownership as long as needed for up to 6 months.

2. Purchase Price and Method of Payment

Buyer shall pay and Seller shall accept the purchase price for the Business as follows:

Consideration

As total consideration for the purchase and sale of the Business (including its tangible and intangible assets as described above), provided for in this Agreement, the Buyer shall pay to the Seller the sum of $71,500.00,

The sum of $25,000.00 has been delivered to Seller as a down payment. The Buyer will pay the seller the balance of $46,500 by October 1, 2016 through a series of payments from sales of the business with a final payment of the balance by October 1, 2016

If Buyer should default and not be able to pay the outstanding balance by October 1, 2016, Sellers shall forfeit all monies paid to date, unless arrangements are made to extend the deadline and agreed to in writing by both parties.

3. Closing

Time and Place of Closing

Closing is the date and time at which parties agree to finalize this transaction. The closing date is designated as October 23, 2015, provided there are no unforeseen delays. Time is of the essence, and in no event shall closing be later, unless an extension is agreed upon in writing between the Buyer and the Seller.

Authorization and Enforceability

This Agreement constitutes Seller's legal, valid and binding obligation, enforceable in accordance with its terms, subject, however, to the effects of bankruptcy, insolvency, reorganization, moratorium, fraudulent transfer and conveyance and other laws for the protection of creditors, as well as to general principles of equity, regardless whether such enforceability is considered in a proceeding in equity.

Properties

The Seller has good and merchantable title to all of its properties and assets that constitute "Business" as defined herein. At Closing, such properties and assets will be subject to no mortgage, pledge, lien, conditional sales agreement, security agreement, encumbrance or charge, secured or unsecured. Seller has or will pay all debts incurred by it up to the date of occupancy by Buyer including all employee compensation and utilities.

Litigation

There is no action, suit, proceeding, claim or investigation by any person, entity, or governmental entity pending or, to Seller's knowledge, threatened against it before any governmental entity that impedes or is likely to impede its ability to consummate the transaction.

C. Representations and Warranties by both Buyer and Seller

Buyer makes the following representations and warranties as of Closing and as of the date hereof.

Warrants

Buyer and Seller hereby represent and warrant that there has been no act or omission by Buyer or Seller which would give rise to any valid claim against any of the parties hereto for a brokerage commission, finder's fee, or other like payment in connection with the transactions contemplated hereby.

Upon final payment of balance, Seller shall deliver to the Buyer a final, executed Bill of Sale transferring to Buyer all of the assets of the Business sold hereunder, free and clear of any and all liens, encumbrances, security interests, debts or taxes of any nature whatsoever.

B. Representations and Warranties of Seller

Seller makes the following representation and warranties as of the date hereof and as of the date of Closing, except when otherwise indicated.

Organization and Standing

The Business is duly organized, validly existing, in good standing under the laws of the State of Arizona and is qualified to carry on its business in the State of Arizona, and has the corporate power and authority to carry on its business as it is now being conducted.

Authority relative to this Agreement

Except as otherwise stated herein, the Seller has full power and authority to execute this Agreement and carry out the transactions contemplated by it. No further action is necessary by the Seller to make this Agreement valid and binding upon Seller and enforceable against it in accordance with the terms hereof, or to carry out the actions contemplated hereby. The execution, delivery, and performance of this Agreement by the Seller will not constitute:

(i) a breach or a violation of the Corporation's Certificate of Incorporation, by-laws, or of any law, agreement, indenture, deed of trust, mortgage, loan agreement or other instrument to which it is a party, or by which it is bound;

(ii) a violation of any order, judgment or decree to which it is a party or by which its assets or properties is bound or affected; or

(iii) result in the creation of any lien, charge or encumbrance upon its assets or properties except as stated herein.

Financial Resources

Buyer shall have as of Closing, sufficient funds with which to pay the Closing Amount and consummate the transaction and, following Closing, Buyer will have sufficient funds to pay any adjustments to the Purchase Price and meet its other payment obligations under this Agreement.

Payment of Costs and Expenses

Except as expressly provided to the contrary in this Agreement, each party shall pay all of its own costs and expenses incurred with respect to the negotiation, execution and delivery of this Agreement and the exhibits hereto.

Buyer shall indemnify and hold Seller harmless from any and all liabilities and obligations arising from Buyer's operation of the business after the Closing. Similarly, Seller shall indemnify and hold Buyer harmless from any and all liabilities and obligations arising from Seller's operation of the business prior to the Closing.

Default

After execution of this Agreement by the parties, if either party fails to perform its respective obligations, or breaches a warranty or covenant, that would constitute a default. The defaulting party shall cure the default with in 30 days of notice by the other party. In the event of a failure to cure such default by either party within the stipulated time, Seller or Buyer shall have the right to cancel this transaction and/or sue for damages in addition to any other relief provided under this Agreement. In a suit for default, the prevailing party shall recover reasonable attorney fees.

Survival of Representations and Warranties

Each of the parties to this Agreement covenants and agrees that their respective representations, warranties, covenants, statements, and agreements contained in this Agreement shall survive the Closing Date. Except the exhibits hereto or the documents and papers delivered by Seller to Buyer in connection with the Agreement herewith, there are no other agreements, representations, warranties, or covenants by or among the parties hereto with respect to the subject matter hereof.

### Buyer's Evaluation

Buyer acknowledges that he is an experienced and knowledgeable businessman and is aware of the risks.

### Cooperation

Both Seller and Buyer agrees to cooperate fully with each other to make for an easy transition and to execute such further instruments, documents and agreements and to give such further written assurances, as may be reasonably requested by the parties, to better evidence and consummate the transactions described herein and contemplated hereby, and to carry into effect the intents and purposes of this Agreement.

### Bankruptcy

There are no bankruptcy, reorganization or arrangement proceedings pending, being contemplated by or to such Buyer's knowledge threatened against such Buyer or any affiliate of such Buyer.

### Confidentiality

Both Seller and Buyer shall not divulge, communicate, or use to the detriment of the other or for the benefit of any other person or persons, or misuse in any way, any of Seller's confidential information discovered by or disclosed to Seller or Buyer as a result of the delivery, execution or performance of this Agreement.

### No Investment Company

Buyer is not (a) an investment company or a company controlled by an investment company within the meaning of the Investment Company Act of 1940, as amended, or (b) subject in any respect to the provisions of that Act.

D. Transactions prior to Closing

Conduct of Seller's Business until Closing

Except as Buyer may otherwise consent in writing prior to the Closing Date, Seller will not enter into any transaction, take any action, or fail to take any action which would result in or could reasonably be expected to result in or cause any of the representations and warranties of Seller contained in this Agreement to be void, invalid, or false on the Closing Date.

Satisfactions

Seller shall deliver to Buyer on the Closing Date a satisfaction of any encumbrance or lien on the business property, satisfactory in form and substance to the Buyer, indicating that the then outstanding unpaid principal balance of any promissory note secured thereby has been paid in full prior to or simultaneously with the closing.

Advice of Changes

Between the date hereof and the Closing Date, Seller will promptly advise Buyer in writing of any fact which, if existing or known at the date hereof, would have been required to be set forth herein or disclosed pursuant to this Agreement.

Documents

Seller shall deliver to Buyer at closing such documents which are in Buyer's sole discretion and necessary to fully satisfy the objectives of this Agreement in content and form.

E. General Provisions

Waivers

No action taken pursuant to this Agreement including any investigation by or on behalf of any party shall be deemed to constitute a waiver by the party taking such action of compliance with any representation, warranty, covenant or agreement contained herein or therein and in any documents delivered in

connection herewith or therewith. The waiver by any party hereto of a breach of any provision of this Agreement shall not operate or be construed as a waiver of any subsequent breach.

No Third-Party Beneficiaries

Except as otherwise provided, nothing in this Agreement shall provide any benefit to any third party or entitle any third party to any claim, cause of action, remedy, or right of any kind, it being the intent of the Parties that this Agreement shall not be construed as a third-party beneficiary contract.

Notices

All notices, requests, demands and other communications which are required or may be given under this Agreement shall be in writing and shall be deemed to have been duly given if delivered or mailed, first class mail, postage prepaid Seller, Buyer, or to such other address as such party shall have specified by notice in writing to the other party.

Sections and Other Headings

The section and other headings contained in this Agreement are for reference purposes only and shall not affect the meaning or interpretations of this Agreement.

Governing Law; Venue

This agreement and all transactions contemplated hereby shall be governed by and construed and enforced in accordance with the laws of Arizona. Any dispute arising under this contract shall be resolved under the commercial arbitration rules of the American Arbitration Association. Any litigation arising out of this Agreement shall be brought before the Federal or State Courts sitting in the City and County of Arizona, Pinal, and the Parties irrevocably consent to the jurisdiction of such courts and waive any right to choose or request any other venue. In the event that arbitration or litigation results from or arises out of this Agreement or the performance thereof, the parties agree to reimburse the prevailing party's reasonable attorney's fees, court costs, and all other expenses, whether or not taxable by the court as costs, in addition to any other relief to which the prevailing party may be entitled.

This Agreement may not be assigned without the prior written consent of the parties hereto. Rights and obligations created by this contract shall be binding upon and inure to the benefit of the parties hereto, their successors and assigns. Whenever used, the singular number shall include the plural, the plural the singular, and the use of any gender shall include all genders.

Entire Agreement

This Contract contains the entire agreement of the parties, and there are no other promises or conditions in any other agreement whether oral or written concerning the subject matter of this Contract. This Contract supersedes any prior written or oral agreements between the parties.

Non Compete

Seller warrants that he will not compete in a similar business within 5 years of the date of execution of this contract.

Severability

**If any provision of this Contract will be held to be invalid or unenforceable for any reason, the remaining provisions will continue to be valid and enforceable. If a court finds that any provision of this Contract is invalid or unenforceable, but that by limiting such provision it would become valid and enforceable, then such provision will be deemed to be written, construed, and enforced as so limited.**

Amendments

This Contract may be modified or amended in writing, if the writing is signed by the party obligated under the amendment.

Initials and Exhibits

This Contract shall not be valid and enforceable unless it is properly executed by Buyer and Seller and their initials affixed to each page of the exhibits attached hereto and made a part hereof.

Signatories

This Agreement shall be executed on behalf of Rick Smith by Rick Smith, its President, and on behalf of Cale Bauch and Cynthia Collins- Bauch

BUSINESS: Solera Services

SELLER:

_____ Rick Smith          10/23/15 Date
By Rick Smith, President

BUYER:

_____ Cale Bauch          10-23-15 Date
By

_____ Cynthia Collins- Bauch   10/23/15 Date
By

State of Arizona County of Pinal
Subscribed and sworn before me on 10-23-15
(Date)
_____
(Notary Signature)

Larinda McGhan
Notary Public
Pinal County, Arizona
My Comm. Expires 08-27-19